UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 1:24-cv-12654-ADB

JOSEPH ABASICANO,

    Plaintiff,

    v.

CITY OF BOSTON; by and through its Treasurer, Ashley Groffenberger; MICHELLE WU; MICHAEL A. COX; PHILLIP OWENS; AND JOSEPH COPPINGER,

    Defendants,

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND PROPOSED ADDITIONAL MATERIAL FACTS

**Plaintiff's Statement of Material Facts and Defendant's Responses**

**Abasciano's employment with the Boston Police Department[1]**

1. In June 2007, Abasciano started his employment with the City as a police officer in the Boston Police Department (the "BPD"). Prior to that, he served honorably for four years on active duty with the U.S. Marine Corps, including a deployment to Iraq. He was also employed briefly as a Correction Officer with a County Sheriff's Department.

    Evidence: Ex. A at 4 ¶1

    **DEFENDANTS' RESPONSE:**

    **Not disputed that this testimony appears in the Civil Service Commission Report.**

2. Throughout his career, Abasciano received approximately three dozen official commendations for his performance and had no prior discipline.

    Evidence: Id. at 4 ¶2.

---

[1] For ease of reference, the Defendants follow the Plaintiff's section titles from his Statement of Material Facts.

**DEFENDANTS' RESPONSE:**

On March 23, 2013, Abasciano had a complaint sustained for Unreasonable Judgment under Rule #102 s. 4 of the BPD Policies and Procedures for using an unauthorized piece of equipment, a "spit mask," for the Boston Police. (CSC Appellant's Exhibits).

3. One of Abasciano's supervisors, Sean Martin ("Martin"), described him as a "high performer" in two districts in which he supervised him. Martin observed Abasciano deal with police colleagues and community members on a daily basis. He never knew Abasciano to treat them with disrespect. Martin never observed any issue or anything impacting Abasciano's ability to do the job.

   Evidence: Id. at 5 ¶5.

   **DEFENDANTS' RESPONSE:**

   Not disputed that this testimony appears in the Civil Service Commission Report.

4. Abasciano maintained a social media account on Twitter (now known as X). He did not use his name in connection with the account, nor did he identify himself as a BPD Police Officer. He used the anonymous handle "@mailboxjoe."

   Evidence: Id. at 8 ¶14.

   **DEFENDANTS' RESPONSE:**

   Not disputed that this testimony appears in the Civil Service Commission Report.

   **Abasciano travels to Washington, D.C. to attend a Trump rally on January 6, 2021.**

5. On January 5, 2020, Abasciano travelled to Washington, D.C. with a fellow police officer to attend the so-called "Stop The Steal" rally scheduled for the next day at which President Donald Trump was expected.

   Evidence: Id. at 9 ¶16.

   **DEFENDANTS' RESPONSE:**

   Not disputed.

   **The events of January 6, 2021 in Washington, D.C.**

6. At 5:53 a.m. on January 6, 2021, Abasciano replied to a tweet from @GabrielSterling, in which Secretary Sterling offered an explanation for his actions, writing: "I can't wait to see you dragged away in handcuffs."

Evidence: Id. at 9 ¶19; Ans. ¶73.

**DEFENDANTS' RESPONSE:**

Not disputed.

7. At 6:44 a.m., Abasciano tweeted:

   MAGA Millions Patriots here in DC. Today is a day for choosing. Today there will be only two parties in America. Traitors and Patriots!" Abasciano added the hashtags #January6, #MAGA and #MarchForTrump"

   Evidence: Id. at 10 ¶20; Ans. ¶79.

   **DEFENDANTS' RESPONSE:**

   Not disputed.

8. Sometime before 9:00 a.m., Abasciano and the fellow off-duty BPD officer checked out of the hotel where they stayed for the night and walked to the rally site at the Ellipse in front of the White House, passing through a metal detector to be admitted into the rally area. They wore civilian clothes and carried no BPD equipment or indicia identifying them as BPD police officers.

   Evidence: Id. at 10 ¶21.

   **DEFENDANTS' RESPONSE:**

   Not disputed that this testimony appears in the Civil Service Commission Report.

9. At 8:14 a.m., Abasciano tweeted:

   Hey @senmajlder look out your window. Millions of Patriots are at your doorstep and we are watching. It is time for choosing. Are you a traitor or are you a Patriot #MarchforTrump, #StopTheSteal and #PatriotParty.

   Evidence: Id. at 10 ¶22; Ans. ¶86.

   **DEFENDANTS' RESPONSE:**

   Not disputed.

10. At 12:40 p.m., while still at the rally, Abasciano tweeted:

    Everything that happens going forward @VP is now on your conscience" with the hashtags #1776Again, #MarchForTrump and #WeThePeople.

Evidence: Id. at 11 ¶25; Ans. ¶91.

**DEFENDANTS' RESPONSE:**

Not disputed.

11. At 3:54 p.m., Abasciano tweeted:

I hope you never sleep well again @VP your Treasonous Act lead [sic] to the murder of an innocent girl and the death of America. You are not a Godly man. I guess @LLinWood was right about you all along.

Evidence: Id. at 11 ¶28; Ans. ¶100.

**DEFENDANTS' RESPONSE:**

Not disputed.

12. At 5:22 p.m., while on the road home, Abasciano tweeted:

What I saw in [sic] today frankly made me weep for our once great nation. The Political Elitist Class has successfully turned Americans against each other. Patriots and Law Enforcement trying to do their jobs in a no win [sic] position. I fear this Treasonous election has killed the republic.

Evidence: Id. at 12 ¶31; Ans. ¶104.

**DEFENDANTS' RESPONSE:**

Not disputed that this testimony appears in the Civil Service Commission Report. The Plaintiff's location at the time is disputed.

**An anonymous complaint is made to the BPD about Abasciano's tweets.**

13. During the evening of January 6, 2021 or on the following day, Abasciano was "doxed."

Evidence: Id. at 12 ¶32.

**DEFENDANTS' RESPONSE:**

Not disputed that this testimony appears in the Civil Service Commission Report. It is disputed that the Plaintiff was "doxed."

14. At some point after Abasciano shut down his @mailboxjoe account, the BPD received the following tweet:

4

@bostonpolice – just a heads up. A couple of your off duty officers were at the Capitol taking pics and here's Abasciano threatening VP and members of Congress. He and others have now removed their social media. Attached to the tweet were screenshots of three of the January 6, 2021 tweets sent by Abasciano.

Evidence: Id. at 13 ¶36; Ans. ¶131.

**DEFENDANTS' RESPONSE:**

Not disputed.

**The BPD opens an investigation of Abasciano.**

15. On about January 16, 2021, the BPD's Anti-Corruption Division (ACD) in the Bureau of Professional Standards began an investigation into the alleged involvement of Abasciano and the fellow officer in the violence at the Capitol on January 6, 2021. The ACD's investigation focused on whether Abasciano had engaged in any criminal misconduct on January 6, 2021.

    Evidence: Id. at 14 ¶38.

    **DEFENDANTS' RESPONSE:**

    Not disputed that ACD opened an investigation to determine whether the Plaintiff participated in criminal conduct.

16. On January 19, 2021, the Internal Affairs Division (IAD) of the Bureau of Professional Standards also opened an investigation into whether Abasciano's actions on January 6, 2021had violated any BPD Rules and Procedures. The IAD rules investigation was put on hold pending completion of the ACD's investigation into Abasciano's possible violation of the criminal law.

    Evidence: Id. at 14 ¶39.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

17. During the ACD investigation, Abasciano was interviewed on February 9, 2021 and April 21, 2021. Abasciano's fellow officer was interviewed on February 18, 2021.

    Evidence: Id. at 14 ¶40.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

5

18. Ultimately, the ACD investigation concluded that Abasciano's tweets and conduct on January 6, 2021 violated no criminal law. The ACD investigation was closed on May 3, 2021 with the conclusion: "Activity was determined not to exist."

    Evidence: Id. at 15 ¶43.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

    **Lt. Det. Thomas Lima's Report**

19. On May 19, 2021, the IAD assigned Sergeant Detective Antunez ("Antunez") to investigate whether Abasciano's actions on January 6, 2021 violated any BPD Rules and Procedures.

    Evidence: Id. at 15 ¶44.

    **DEFENDANTS' RESPONSE:**

    Disputed in so far as Sgt. Det. Antunez was assigned to investigate violations of specific BPD Rules and Procedures, Rule 102, Section 4, Neglect of Duty/Unreasonable Judgment. **Exhibit A, p. 15, ¶ 44.**

20. Antunez prepared an investigative report which he submitted through Lieutenant Detective Thomas Lima ("Lima"), to his immediate superior, Eddy Chrispin ("Chrispin") then the Deputy Superintendent in charge of the IAD.

    Evidence: Id. at 16 ¶45.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

21. On June 29, 2021, Lima prepared a cover report which contained an abridged summary of the facts drawn from Antunez and a conclusion that Abasciano had not violated any BPD rules.

    Evidence: Id. at 16 ¶46.

    **DEFENDANTS' RESPONSE:**

    Disputed in so far as the report only looked at specific Rules and Regulations and not "any" BPD rules. **Exhibit B.**

22. Lima's report provided in pertinent part:

    Police Officer Joseph Abasciano posted the tweets above as a private citizen. These tweets which might be categorized as political rhetoric hyperbole [and] could be considered offensive by some but . . . did not rise to the level of criminality nor call into question his ability or judgement to act as a police officer and would not be considered a violation of BPD rules and regulations.

    Evidence: Ex. B at R0368.

    **DEFENDANTS' RESPONSE:**

    Not disputed that this language appears in Lema's report.

    **The BPD determines that Abasciano violated no departmental rules and takes no disciplinary action against him.**

23. Lima's report was forwarded and approved by Chrispin, then forwarded to BPS Superintendent Sharon Dottin ("Dottin"), who noted and approved the report and forwarded it along for review by the BPD Legal Advisor.

    Evidence: Ex. A at 16 ¶46.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

24. On December 8, 2021, the BPD Legal Advisor reported: "After review, I agree with the finding of NON-SUSTAINED" as to all allegations against Abasciano. Pursuant to standard procedure, the Legal Advisor then forwarded the file to Superintendent-in-Chief Gregory Long, the Acting Police Commissioner who then had the final word on all IAD complaints.

    Evidence: Id. at 18 ¶49.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

25. Acting Police Commissioner Long took no action on the recommended finding in Abasciano's IAD investigation during his tenure.

    Evidence: Id. at 18 ¶50.

**DEFENDANTS' RESPONSE:**

Not disputed.

**The BPD launches a third investigation of Abasciano after nine months of inactivity.**

26. In or about September 2022, approximately a month after becoming Police Commissioner, Michael Cox ("Commissioner Cox") elevated then Sergeant Detective Philip Owens ("Owens") to the (non-civil service) position of Deputy Superintendent eventually assigning him to replace Chrispin as the head of the IAD.

    Evidence: Id. at 19 ¶53.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

27. One of the initial assignments that Owens received was to "take a look" at several IAD files pending review and needing a decision by the Police Commissioner. The largest of these was Abasciano's file, which Owens knew was "a high-profile case" he had read about in the newspapers.

    Evidence: Id. at 20 ¶54.

    **DEFENDANTS' RESPONSE:**

    Not disputed that this testimony appears in the Civil Service Commission Report.

    **Owens writes a non-concurrence letter opining that Abasciano violated BPD rules.**

28. On December 20, 2022, Owens forwarded a "Non-Concurrence" letter to Commissioner Cox disagreeing with the recommended findings of non-sustained as stated in the November 2021 IAD report.

    Evidence: Id. at 20 ¶57.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

29. In the non-concurrence letter, Owens wrote that Abasciano "tweeted incendiary tweets that condone the violent insurrection [that] would be viewed unfavorably by the Boston Police Department and the citizens of the City of Boston"

    Evidence: Id. at 20 ¶57.

**DEFENDANTS' RESPONSE:**

Not disputed. He additionally noted that Abasciano "purposefully misused his granted FMLA outside of its intended scope by attending a rally on January 6, 2021 that turned into a violent insurrection;" that "the argument that Officer Abasciano partook of the events of January 6, 2021 as a private citizen [and not as a BPD officer] was inaccurate;" and that he "showed consciousness of guilt by shutting down his Twitter account after he outed as a BPD police officer because he understood that being identified as a Boston Police Officer…present at the January 6th 2021 violent insurrection…would be viewed unfavorably by the Boston Police Department and the citizens of the City of Boston." **Exhibit A, pp. 20-21, ¶ 57.**

**Dottin and the BPD Legal Department flip-flop, reversing their prior determinations that Abasciano's conduct violated no departmental rules.**

30. Dottin and the Office of the Legal Advisor both reversed their prior opinions that charges against Abasciano were "Not Sustained" and approved Owens's "Non-Concurrence" letter that recommended findings of "Sustained" violations of BPD rules.

    Evidence: Id. at 21 ¶59.

    **DEFENDANTS' RESPONSE:**

    Not disputed that with the additional insights provided by Owens, their positions were updated.

    **The BPD holds a "Green Folder" meeting recommending Abasciano's termination.**

31. A "Green Folder" meeting was held in which it was recommended that Abasciano be terminated.

    Evidence: Id. at 23 ¶63.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

32. At the Green Folder meeting, comparator evidence was introduced of two officers who the BPD fired for social media posts.

    Evidence: Id. at 22 ¶62.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

33. The BPD recommend terminating Police Officer MG for two comments he made on Facebook: (1) "Rats Get Bats" on the FBI's website to mock the request of the FBI's outreach to the public seeking to identify individuals who took part in the insurrection on January 6, 2021; (2) "This is what happens when you hang out with drug dealers" in reference to the killing of Breonna Taylor in a botched police raid in Louisville.

    Evidence: Id. at 22 ¶62.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

34. The BPD recommend terminating Police Officer JB after referring to a black university professor he had arrested using a repugnant racial stereotype. The case received national notoriety and led to President Obama inviting the officer and the professor to the White House for a "beer summit."

    Evidence: Id. at 23 ¶63.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

35. Commissioner Cox approved the recommendation to proceed with Abasciano's termination.

    Evidence: Id. at 23 ¶63.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

    **A disciplinary hearing is held resulting in a recommendation that Abasciano's tweets violated BPD rules.**

36. On January 30, 2023 and February 15, 2023, a hearing was convened before BPD Chief Administrative Hearings Officer Deputy Superintendent Richard Dahill ("Dahill") on three charges:
    - Specification I – Misuse of FMLA in Violation of BPD Rule 103, §3, Conduct Unbecoming
    - Specification II – Posting six tweets in Violation of BPD Rule 103, §3, Conduct Unbecoming;
    - Specification III Violation of Rule 113, §5, Canon 8

    Evidence: Id. at 23 ¶64.

**DEFENDANTS' RESPONSE:**

Not disputed.

37. The BPD was represented by counsel, introduced thirty-five exhibits and called Owens and Antunez as witnesses.

    Evidence: Id. at 23 ¶64.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

38. Abasciano was represented by counsel, introduced eighteen exhibits, testified on his own behalf and called Dottin and Chrispin as witnesses.

    Evidence: Id. at 23 ¶64.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

39. On March 7, 2023, Dahill issued a report finding violations of Specifications II and III.

    Evidence: Id. at 24 ¶65.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

    **The BPD terminates Abasciano because of his tweets.**

40. On March 13, 2023, the BPD terminated Abasciano by a letter issued by Commissioner Cox. Commissioner Cox wrote:

    I find your social media posts describing individuals that stormed the Capital [sic] building as 'patriots' calls into question your ability to police members of the community in an unbiased and objective manner. I also find that this conduct impairs the operation of the Department and its employees by damaging the Department's reputation and trust within the community. The Boston Police Department maintains a mission to foster trust and cooperation in the community and your conduct is detrimental to the mission of the Boston Polce Department.

    Evidence: Ex. C at R1233.

11

**DEFENDANTS' RESPONSE:**

Not disputed that this is some of the language which appears in the letter written by Commissioner Cox.

**Abasciano's appeal to the Massachusetts Civil Service Commission**

41. On March 23, 2023, Abasciano, appealed to the Massachusetts Civil Service Commission (the "Commission") contesting his termination pursuant to Mass. Gen. Laws c. 31, § 43.

    Evidence: Ex. A at 1.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

42. Five days of evidentiary hearings were held before the Commission on August 16, 2023, August 23, 2023, October 11, 2023, October 18, 2023, and December 7, 2023.

    Evidence: Id. at 3.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

43. The parties submitted eighty-six exhibits into evidence.

    Evidence: Id. at 3.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

44. The BPD called the following witness: Dottin; Owens; and Antunez.

    Evidence: Id. at 4.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

45. Abasciano called the following witness: Abasciano; Chrispin; and Martin.

    Evidence: Id. at 4.

**DEFENDANTS' RESPONSE:**

Not disputed.

46. On April 4, 2024, the City submitted a post-hearing brief and proposed decision.

    Evidence: Ex. D.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

47. On April 4, 2024, Abasciano submitted a post-hearing brief and proposed decision.

    Evidence: Ex. E.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

48. On December 19, 2024, the Commission issued a decision vacating Abasciano's termination.

    Evidence: Ex. A at 48.

    **DEFENDANTS' RESPONSE:**

    Not disputed.

49. Abasciano's tweets were sent as a private citizen, while off duty on FMLA leave, using an anonymous handle from a Twitter account that did not identify him as a police officer.

    Evidence: Id. at 35.

    **DEFENDANTS' RESPONSE:**

    Not disputed that this appears in the Civil Service Commission Report.

50. The BPD's decision to terminate Abasciano was grounded explicitly on the tweets he sent.

    Evidence: Id. at 35.

**DEFENDANTS' RESPONSE:**

Not disputed that this appears in the Civil Service Commission Report.

51. Abasciano's tweets were private, political speech on matters of public concern.

    Evidence: Id. at 35.

    **DEFENDANTS' RESPONSE:**

    Not disputed that this appears in the Civil Service Commission Report.

52. The BPD did not establish an adequate justification to restrict Abasciano's speech in the interest of protecting the BPD's mission or operations.

    Evidence: Id. at 35.

    **DEFENDANTS' RESPONSE:**

    Not disputed that this appears in the Civil Service Commission Report.

53. The City did not appeal the Commission's decision.

    Evidence: Ans. ¶359.

    **DEFENDANTS' RESPONSE:**

    Not disputed that there was no appeal, but disputed as to any suggestion that this suggests agreement with the decision as there was already ongoing litigation in Federal Court.

### Defendants' Statement of Additional Material Facts

54. Sgt. Antunez did not undertake any investigation into the First Amendment to see if any of Officer Abasciano's tweets were protected speech. Civil Service Commission Appeal Hearing Transcript (Day 1) p. 82 ¶ 19.

55. Supt. Dottin did not investigate Abasciano's political speech in the context of First Amendment law. Civil Service Commission Appeal Hearing Transcript (Day 1), p. 172 ¶ 16)

56. Supt. Dottin was unable to answer questions about the First Amendment standard. Civil Service Commission Appeal Hearing Transcript (Day 1), pp. 153-154.

57. Supt. Dottin did not investigate any potential internal disruptions as a result of Abasciano's tweets as that was not considered in the disciplinary meetings regarding rules violations. Civil Service Commission Appeal Hearing Transcript (Day 1), p. 175.

58. The Civil Service Commissioner's questions to the witnesses focused on political speech as defined in the Boston Police Rules and Regulations and not a First Amendment analysis. Civil Service Commission Appeal Hearing Transcript (Day 1), pp. 95-97.

59. Supt. Ownes testified that his investigation was conducted strictly to review rules violations and that he did not do any analysis of First Amendment protected speech and is unfamiliar with the Pickering test. Civil Service Commission Appeal Hearing Transcript (Day 2), p. 126, ¶¶ 6-12, 17-23.

60. Supt. Ownes testified that he did not do anything, as a part of his investigation, to determine whether or not Abasciano's tweets were protected speech under the First Amendment. Civil Service Commission Appeal Hearing Transcript (Day 3), pp. 154 – 155.

61. Supt. Crispin testified that the rules require a balance between what conduct is unbecoming and what is First Amendment rights and notes his findings were that the seven tweets were protected conduct under 102, section 30, but made no specific findings as to First Amendment protections. Civil Service Commission Appeal Hearing Transcript (Day 4), pp. 52-53.

62. Supt. Crispin notes that officers are trained in protecting people's First Amendment rights, but not necessarily as it relates to police officer's right to expression under the First Amendment. Civil Service Commission Appeal Hearing Transcript (Day 4), p. 148.

63. Supt. Crispin testified that officers are not trained on their own First Amendment rights, but given a set of the Department's rules and regulations, with no specific focus on their own ability to exercise the First Amendment. Civil Service Commission Appeal Hearing Transcript (Day 4), pp. 148-149.

|  |  |
|---|---|
| | Respectfully submitted,<br>The Defendants,<br>City of Boston, by and through its Treasurer, Ashley Groffenberger, Michelle Wu, Michael A. Cox, Phillip Owens, and Joseph Coppinger,<br>By their attorneys, |
| | *Michael V. Glennon*<br>Leonard H. Kesten, BBO# 542042<br>Michael V. Glennon, BBO# 678977<br>BRODY, HARDOON, PERKINS & KESTEN, LLP<br>265 Franklin Street, 12th Floor<br>Boston, MA 02110<br>(617) 880-7100<br>lkesten@bhpklaw.com |
| DATED: July 1, 2025 | mglennon@bhpklaw.com |

**CERTIFICATE OF SERVICE**

      I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing(NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

                                             */s/ Michael V. Glennon*
                                             Michael V. Glennon, BBO# 678977

DATED: July 1, 2025