UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | | |
|---|---|---|
| JOSEPH ABASCIANO,<br>  Plaintiff | : | |
| | : | |
| | : | |
| v. | : | C.A. No. 1:24-cv-12654-ADB |
| | : | MOTION FOR LEAVE TO FILE |
| | : | EXCESS PAGES (granted on July 28, 2025) |
| CITY OF BOSTON, by and Through | : | |
| Its Treasurer, Ashley Groffenberger; | : | |
| MICHELLE WU; MICHAEL A. COX; | : | |
| PHILLIP OWENS; and | : | |
| JOSEPH COPPINGER, | : | |
|   Defendants. | : | |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY
AS TO COUNT VII OF THE AMENDED VERIFIED COMPLAINT AGAINST
DEFENDANT CITY OF BOSTON**

Plaintiff Joseph Abasciano ("Abasciano") hereby submits this Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability as to Count VII of the Amended Verified Complaint Against Defendant City of Boston (the "City").[1]

For the reasons set forth below, and as fully articulated in his prior submissions, Abasciano respectfully requests that the Court grant his Motion for Partial Summary Judgment.

## INTRODUCTION

The City begins its opposition brief with an astonishing assertion unsupported by the law in this jurisdiction: findings of fact and conclusions of law by the Massachusetts Civil Service Commission (the "Commission") should essentially be disregarded as "generally not binding" in subsequent litigation. According to the City, allowing the Commission's decision to carry preclusive effect would improperly shift constitutional adjudication away from federal courts and into the

---

[1] For simplicity, clarity, and consistency, Abasciano will refer to all Defendants collectively as "the City."

hands of local administrative bodies. There is only one problem with the City's argument (apart from lacking legal support): it fundamentally misstates well-established precedent by the Massachusetts Court of Appeals,[2] the Massachusetts Supreme Judicial Court,[3] the First Circuit,[4] and the U.S. Supreme Court[5] that federal courts must afford preclusive effect to state administrative agency determinations provided the parties had a full and fair opportunity to litigate the issues involved. Much to the chagrin of the City, in this jurisdiction, there is simply no carve out for constitutional matters involving Section 1983 claims. Indeed, contrary to the City's baseless claim, applying collateral estoppel here does not diminish federal judicial authority or transfer constitutional adjudication improperly. Rather, it appropriately recognizes and respects prior administrative adjudications – exactly as binding precedent mandates. Their position, if accepted, would render meaningless the very concept of administrative adjudication and collateral estoppel. The Court should reject the City's invitation to disregard controlling authority.

The City's opposition also fails because it mischaracterizes the law of collateral estoppel and attempts to draw artificial distinctions between the issues litigated before the Commission and those now before this Court. Contrary to the City's assertions, the essential issue previously decided by the Commission – whether Abasciano's tweets were protected speech or misconduct justifying termination – is precisely the same question presented by his First Amendment retaliation claim here. Summary judgment on liability is therefore warranted, because the City had a full and fair

---

[2] See, e.g., Ogaldez v. Dep't of Correction, 17-P-742, 2019 WL 124228 at *2, (Mass. App. Ct. Jan. 8. 2019) (". . . so long as the requirements of collateral estoppel are met, the findings of an administrative agency are entitled to preclusive effect in actions under 42 U.S.C. § 1983.").

[3] See, e.g., Brunson v. Wall, 405 Mass. 446, 448-51 (1989) (holding that plaintiff's claim of race discrimination under 42 U.S.C. § 1983 precluded by MCAD's finding of no discrimination); Alba v. Raytheon Company, 441 Mass. 836, 841 (2004) ("The doctrine [of collateral estoppel] may be applied with respect to administrative agency determinations so long as the tribunal rendering judgment has the legal authority to adjudicate the dispute.").

[4] Diaz v. City of Somerville, 59 F.4th 24, 29 (1st Cir. 2023) ("[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." (quoting Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)).

[5] Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986).

opportunity to litigate and lost on the central issue: the legality of terminating Abasciano for his tweets.

Significantly, neither in its opposition papers nor in its Rule 26 Initial Disclosures does the City identify any new evidence or additional witnesses that could assist the Court in resolving this claim. The City presents no citizens or City employees who complained about Abasciano's tweets, nor does it offer new emails, text messages, or documents from anyone inside or outside the Boston Police Department (the "BPD") condemning his statements. The reason for this omission is clear: no such evidence of disruption within the BPD exists. Had there been any actual or potential disruption, the City would undoubtedly have presented it already. Instead, the City's Rule 26 Initial Disclosures simply recycle the same witnesses previously called before the Commission, underscoring that the City is seeking nothing more than an improper de novo review of the Commission's decision. The City had its chance to prove that Abasciano's tweets amounted to misconduct and failed to do so. It is not entitled to a "mulligan." Allowing such a "do-over" would frustrate the very purpose of the doctrine of collateral estoppel.

I. **COLLATERAL ESTOPPEL APPLIES TO CONSTITUTIONAL ISSUES DECIDED BY THE COMMISSION; THE CITY'S CLAIM THAT CONSTITUTIONAL ISSUES MUST BE DECIDED ONLY BY FEDERAL COURTS LACKS LEGAL SUPPORT.**

The City incorrectly contends that collateral estoppel cannot apply to constitutional claims such as those arising under the First Amendment, asserting that such issues must be reserved exclusively for adjudication by federal courts. This proposition finds no support in Massachusetts law or First Circuit precedent. To the contrary, Massachusetts appellate decisions confirm that constitutional claims, including those involving First Amendment rights, can indeed be fully adjudicated in administrative forums and are entitled to collateral estoppel effect in subsequent federal litigation.

In <u>Brunson v. Wall</u>, 405 Mass. 446 (1989), the plaintiff, a state school employee, filed claims for discrimination under Massachusetts law (Chapter 151B), federal law (42 U.S.C. § 1981), and also for a deprivation of rights under 42 U.S.C. § 1983 ("Section 1983"). Prior to the lawsuit, she had pursued her claims before the MCAD, which ruled against her and found no discrimination. The plaintiff did not appeal the MCAD's decision. Instead, she sought to litigate the same discrimination claims in state court. The Massachusetts Supreme Judicial Court held that the un-appealed MCAD decision precluded the plaintiff from relitigating the issues essential to her Section 1983 claim. See <u>id</u>. at 455. The court explicitly stated that the MCAD qualifies as a "court of competent jurisdiction" because it is "a tribunal recognized by law as possessing the right to adjudicate the controversy." <u>Id</u>. at 450. Thus, <u>Brunson</u> firmly establishes that collateral estoppel applies to Section 1983 claims previously adjudicated by qualified state administrative agencies, undermining the City's assertion to the contrary.

In <u>Ogaldez v. Dep't of Corr</u>., No. 17-P-742 (unpublished), 2019 WL 124228, at *1, (Mass. App. Ct. Jan. 8. 2019), the Massachusetts Appeals Court explicitly held that collateral estoppel can bar the re-litigation of constitutional issues previously determined by a state administrative agency. Specifically, the <u>Ogaldez</u> court gave collateral estoppel effect to findings of the Commission and the Massachusetts Department of Labor Relations, both of which are state administrative agencies, in a subsequent federal civil rights action filed under Section 1983. Critically, the plaintiff in <u>Ogaldez</u> brought constitutional claims (retaliation and discrimination under Section 1983 and the Massachusetts Civil Rights Act). The Appeals Court explicitly recognized that "the doctrine of collateral estoppel bars re-litigation of an issue where: '(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication and was essential to the earlier judgment.'" <u>Id</u>. at *2. The court applied this standard to

affirm the preclusive effect of the Commission's findings, including those involving issues that closely paralleled constitutional considerations, such as whether disciplinary actions were retaliatory or discriminatory in nature. Id. The Ogaldez decision reflects Massachusetts courts' consistent treatment of state administrative decisions – particularly decisions by the Commission – as judicially competent to resolve constitutional issues that subsequently bar re-litigation of identical claims in federal court. Importantly, Massachusetts law does not carve out an exception for constitutional claims from collateral estoppel where state administrative proceedings possess sufficient procedural protections and judicial capacity, as here. Furthermore, this approach aligns precisely with the U.S. Supreme Court's holding in University of Tennessee v. Elliott, 478 U.S. 788 (1986), which mandates that federal courts grant the same preclusive effect to unreviewed state administrative agency findings as would the state courts themselves. Id. at 799. Thus, the City's contention that the Commission's decision here cannot preclude re-litigation of the First Amendment issues is without merit.

     Moreover, the Commission is specifically empowered under state law to adjudicate these matters, and it has regularly adjudicated disputes involving constitutional considerations. It is a well-established state-level administrative body vested with judicial-like authority and expertise, particularly given Commissioner Paul M. Stein's extensive legal training and decades of experience as both a practicing attorney and a long-standing Commissioner.[6] His legal expertise and extensive judicial experience unequivocally satisfy the U.S. Supreme Court's requirement under Elliott and

---

[6] Commissioner Paul M. Stein authored the Commission's thorough and comprehensive decision vacating Abasciano's termination. Commissioner Stein was appointed as a Commissioner to the Civil Service Commission in 2008 and was most recently re-appointed to a 5-year term in 2023. Commissioner Stein is a graduate of Trinity College (Conn.) and Vanderbilt Law School. His prior public service includes active duty as a commissioned officer with the United States Air Force, Senior Counsel of the State Rating Bureau in the Massachusetts Division of Insurance and Deputy Chief of the Insurance Division in the Office of Attorney General James M. Shannon. He has practiced law with firms in New York, Boston and Framingham, where he concentrated in labor and employment, employee benefits, insurance, health care and consumer law. He is a member of the Massachusetts and New York State Bars. Paul M. Stein, Commissioner, Mass.gov, https://www.mass.gov/person/paul-m-stein-commissioner (last visited July 27, 2025).

Massachusetts law that the adjudicative body be qualified and capable of resolving complex legal issues that are at play here.

## II. THE ISSUES BEFORE THE COMMISSION AND THIS COURT ARE IDENTICAL.

The City argues that collateral estoppel does not apply because "the issues and causes of action decided by the Commission are not identical to those in the current action." (ECF No. 42 at 6). This argument fails because it improperly conflates differing burdens of proof with differences in substantive issues. The City ignores that the substantive core question – whether Abasciano's speech could lawfully justify termination – was litigated and conclusively decided by the Commission. As the First Circuit held in Diaz v. City of Somerville, 59 F.4th 24 (1st Cir. 2023), differences in the burden of proof or standards of review do not defeat collateral estoppel. The Diaz court wrote:

> . . . [Diaz] asserts that the issue of disparate treatment raised before the Commission was not identical to the issue of disparate treatment presented to the district court through his chapter 151B claim. The difference, he says, is that the Commission was determining whether just cause existed for his firing, whereas the district court was being asked to adjudicate his claim of discrimination.
>
> For present purposes, that is a distinction without a difference. Just as the City bore the burden of persuasion on the chapter 151B claim throughout the course of the modified McDonnell Douglas framework, so too it bore the burden of persuasion before the Commission. And the issue of whether Diaz had been treated differently than other similarly situated officers was essential to, and precisely the same in, both proceedings.
>
> . . . Diaz sought to relitigate that very same issue before the district court. The overlap between the issue of disparate treatment raised before the Commission and the issue of disparate treatment raised before the district court was "so substantial that preclusion [was] plainly appropriate."

Id. at 30 (internal citations omitted).

**III.  THE CITY CONVENIENTLY DISREGARDS THE CONTROLLING PRECEDENT ESTABLISHED IN DIAZ V. CITY OF SOMERVILLE – A PRECEDENT ITS OWN COUNSEL SUCCESSFULLY ADVOCATED IN THAT VERY CASE.**

There is a straightforward explanation for why the City conspicuously ignores the binding precedent established by Diaz:  the City's current counsel – Leonard H. Kesten and his law firm – represented the City of Somerville in that very case, both at the trial court and before the First Circuit, and successfully argued for precisely the legal principle that the City now seeks to avoid.

Here, it is curious – and more than a little convenient – that defense counsel and his law firm now vigorously oppose applying collateral estoppel to the Commission's decision when, in Diaz, the very same attorney and law firm successfully advocated precisely the opposite position.  Yet now, confronted with nearly identical circumstances, counsel adopts an entirely contradictory stance.  While Abasciano does not suggest any ethical impropriety, the City's strategic "flip-flopping" is conspicuous, self-serving, and undermines the credibility of its current position.  The doctrine of collateral estoppel is not a legal convenience, to be adopted or discarded depending on the interests of the moment.  The Court should reject this attempt to evade the consequences of a fully litigated, final adjudication.

**IV.  THE CITY FAILS TO IDENTIFY ANY NEW EVIDENCE OR MATERIAL DIFFERENCES THAT WOULD WARRANT A NEW DETERMINATION.**

The City claims it was deprived of an opportunity to litigate fully, but tellingly fails to specify any new evidence, witnesses, or arguments that it would present if allowed to relitigate these claims.  In fact, the City's Rule 26 Initial Disclosures filed in this case show no new witnesses or previously undisclosed evidence (Ex. A).  Instead, it lists exactly the same witnesses already called before the Commission:  Abasciano, Owens, Dottin, Crispin, Antunez, Diaz, Lema, and other departmental supervisors involved in the same underlying investigation (Id.).  The City essentially seeks a prohibited de novo review of the Commission's thoroughly litigated and un-appealed final

determination, using precisely the same facts, witnesses, and evidence.  This is the exact scenario collateral estoppel aims to prevent, ensuring judicial economy and finality in adjudication.

## V.    THE CITY'S CLAIM OF PROCEDURAL UNFAIRNESS IS WITHOUT MERIT.

### A.    The City had an opportunity or incentive to litigate the constitutional issues at the Commission.

The City's contention that applying collateral estoppel here would be procedurally unfair because it allegedly lacked incentive or opportunity to litigate the constitutional issues at the Commission is demonstrably false and contradicted by the record.  The undisputed evidence shows the City was explicitly on notice, well in advance of the Commission hearings, that Abasciano's termination implicated a potential First Amendment retaliation claim under Section 1983.

### 1.    The Lema Report (November 16, 2021) (Ex. B)

As early as November 16, 2021 – nearly one year and nine months before the Commission hearings – the City's own Internal Affairs investigator, Lt. Det. Thomas W. Lema, Jr. ("Lema"), specifically referenced First Amendment considerations when he concluded that Abasciano's tweets were "political rhetoric hyperbole" and protected speech rather than actionable misconduct (Ex. B at 16) (the "Lema report").  The Lema Report states clearly:

> Under the Constitution of the United States, the First Amendment states that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . ."

(Id. at 15).

Lema then analyzes Supreme Court precedent, including Brandenburg v. Ohio, 395 U.S. 444 (1969), noting explicitly that speech cannot be punished unless it is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." (Id.).  Applying this well-established constitutional framework, Lema specifically concluded that Abasciano's tweets constituted "political rhetoric hyperbole" and explicitly found no evidence that the tweets rose to

the level of actionable misconduct or criminal behavior. Lema ultimately recommended a finding of "Not Sustained" precisely because of First Amendment considerations. Id.

The Lema Report demonstrates conclusively that the City conducted a detailed First Amendment analysis long before the Commission hearing commenced. Thus, the City's contention now – that it lacked notice or motivation to litigate these very constitutional issues – is belied by its own investigator's findings, which explicitly considered and addressed First Amendment protections. The City, therefore, was not merely on notice – it actively engaged in constitutional analysis at the administrative level, making its claim of procedural unfairness entirely without merit.

**2. The Dahill Decision (March 7, 2023) (Ex. C)**

Deputy Superintendent Richard Dahill's ("Dahill's") decision explicitly referenced and addressed the First Amendment implications of Abasciano's tweets, further undermining the City's assertion that it lacked notice or opportunity to litigate constitutional issues at the administrative level. Specifically, Dahill, serving as the hearing officer, directly analyzed whether Abasciano's tweets constituted protected speech, thus placing the City squarely on notice that First Amendment considerations were central to the disciplinary proceedings. Dahill recognized that Abasciano was claiming his tweets were protected by the First Amendment and BPD rules by stating:

> Officer Abasciano also argued that he was just expressing his First Amendment rights as a private citizen. Department Rule 102 states, 'The Boston Police Department recognizes that its employees have certain basic personal rights and restricts those rights only where necessary to ensure the integrity of the Department and the highest quality of police service are maintained.'

(Ex. C at 13).

Dahill explicitly applied a First Amendment balancing test akin to the standards established in Pickering v. Board of Education, and found against Abasciano and for the City writing:

> I find the twitter posts made by Officer Abasciano impaired the working relationships among members of the Department, damaged the Department's reputation, and interfered with the Department operations as evidenced by the numerous media reports concerning Officer Abasciano's conduct and post. The Department, as an employer, does have the right to limit the speech of their employees and, if necessary,

> issue discipline . . . I find the posts made by Officer Abasciano negatively impacted the Department's relationship with the community and damaged the Departments reputation.

(Id.).

Regardless of the correctness of Dahill's ultimate conclusion, the fact that he expressly engaged in a detailed First Amendment analysis further confirms that the City was not only on notice but was actively litigating the constitutional issues surrounding Abasciano's speech. The City thus had every opportunity – and strong incentive – to litigate the First Amendment issues fully and vigorously at the administrative level, making its current procedural unfairness argument entirely untenable.

### 3. The proceedings before the Commission

#### a. Abasciano's pre-hearing memo (May 22, 2023) (Ex. D)

The Appellant's Pre-Hearing Memorandum explicitly identified the First Amendment as a core issue in the administrative proceeding, directly placing the City on notice that constitutional protections were central to the dispute. Specifically, under the section "Appellant's contentions," the memorandum unequivocally states: "The termination is unlawful because the conduct for which Patrolman Abasciano was terminated is protected by the First Amendment to the United States Constitution." (Id.). By expressly framing the issue this way, the pre-hearing memorandum put the City squarely on notice that the legality of terminating Abasciano turned on whether his tweets constituted protected First Amendment expression. Thus, even before the Commission hearing began, the City was explicitly informed – by a formal filing – that the First Amendment implications of the case would be at the forefront of the proceedings. This further refutes the City's claim of procedural unfairness and demonstrates conclusively that it was fully aware of – and had ample incentive and opportunity to litigate – the constitutional issues that now form the basis of Abasciano's Section 1983 claim.

### b. The Commission's procedural order (May 25, 2023) (Ex. E)

In a procedural order, the Commission memorialized Abasciano's First Amendment assertion stating:

> Counsel for the Appellant argued that the BPD has violated the Appellant's First Amendment protections and points to the fact that only 2 of the 6 tweets were sent after violence occurred in the Capitol, with one of those tweets purportedly quoting Ulysses S. Grant.

(Id. ¶6).

This explicit reference to the First Amendment claim in the Commission's procedural order placed the City squarely on notice, prior to the administrative hearings, that the constitutional question of protected speech was a critical aspect of the case. Thus, any claim that the City lacked notice or opportunity to fully litigate the constitutional issues at the administrative level is completely refuted by the Commission's own procedural directive.

### c. Abasciano's opening statement at the First Hearing before the Commission

During his opening statement at the first hearing before the Commission, Abasciano's counsel specifically argued:

> Here, the Boston Police Department fired Officer Abasciano for sending six tweets on January 6, 2021. However, all of the comments Officer Abasciano made in these tweets are content-based speech that are absolutely, unequivocally, 100 percent protected by the First Amendment to the United States Constitution. No matter how hard the Boston Police Department tries to insert a square peg into a round hole by transforming them into a rules violation to serve the political agenda . . . as the evidence will show, Officer Abasciano's speech caused no adverse impact on the functioning of the Boston Police Department that would outweigh his right to free speech, thereby permitting his employer to fire him under the United States Supreme Court ruling in Pickering v. Board of Education.

(Hrg. Tr. I at 27:20-28:19).

Thus, counsel's statement plainly invoked the Pickering balancing test as the central legal standard applicable to the dispute, explicitly placing the City on notice from the very outset of the administrative hearing that the core constitutional issue – the balance between protected speech and potential departmental disruption – would be the key focus of litigation. This explicit framing of the

case around First Amendment principles and Pickering placed the City squarely on notice, giving it ample opportunity to litigate and rebut these constitutional issues. Any argument by the City that it was somehow unaware or unfairly disadvantaged is clearly contradicted by this transcript.

### B. The City Actually Litigated the Constitutional Issues at the Commission.

The City cannot credibly argue that it did not actually litigate the constitutional issue before the Commission. The record unequivocally demonstrates the City took affirmative steps during the Commission proceedings to align its arguments with constitutional standards. Indeed, the City's witnesses and counsel explicitly attempted to justify the termination decision by arguing that the tweets harmed public trust, impeded department operations, and reflected poorly on the department – arguments that are precisely in line with the second prong of the Pickering balancing test applicable in First Amendment employment disputes. Having made these constitutional arguments before the Commission, the City's current claim that it lacked incentive or opportunity to address the First Amendment is transparently disingenuous. In truth, the City vigorously litigated precisely these constitutional questions and lost.

Finally, the City made a strategic choice not to appeal the Commission's adverse ruling. Having voluntarily abandoned available judicial remedies, the City cannot now seek to evade the consequences of that final decision. Allowing the City another opportunity to litigate these identical issues would reward gamesmanship and fundamentally undermine the purpose of collateral estoppel.

### 1. Superintendent Sharon Dottin's testimony at the Commission

Superintendent Sharon Dottin ("Dottin") testified explicitly regarding whether Abasciano's tweets were considered political speech protected under department rules. The key points from Dottin's testimony are:

- **Classification as Political Speech Protected Under BPD Rule 102, § 30.** Dottin agreed during testimony that Officer Abasciano's tweets qualified as "political speech" under BPD Rule 102, § 30 of the Boston Police Department regulations. She confirmed

      that Abasciano's tweets expressed political opinions, primarily related to the 2020 Presidential election, and thus fell within protected speech parameters according to department rules.

(Hrg. Tr. I at 150:11-151:23).

- **Speech vs. Conduct Unbecoming**. Dottin made a distinction between the content of political speech and potential issues under conduct unbecoming rules. She recognized the complexity ("gray area") of assessing tweets as conduct unbecoming versus political expression, indicating that while Abasciano's tweets were political in nature, the controversy stemmed from concerns regarding how the content could reflect negatively on the department rather than the political opinions themselves.

(Id. at 159:12-160:10).

In summary, Dottin's testimony explicitly recognized that Abasciano's tweets constituted political speech protected under the department's rules, particularly BPD Rule 102, § 30, and acknowledged the complexity and ambiguity in distinguishing between protected political expression and conduct unbecoming.

      2.      **Deputy Superintendent Philip Owen's testimony at the Commission**

The line of questioning posed to Deputy Superintendent Philip Owens ("Owens") clearly indicates that the City anticipated a First Amendment retaliation claim and structured its justification around the Pickering balancing test. Under the Pickering test, the public employee's right to free speech is balanced against the government's interest in promoting the efficiency of public services cite. The City's counsel directly asked Owens:

    Q.    And so, again, calling somebody a patriot or using the term patriot, is that a rules violation, Superintendent Owens?
    **A:**    **No, sir.**
    Q:    But is it when you're now saying that if you're not a patriot you're a traitor to this country, is that a problem for the Boston Police Department?
    **A:**    **That's definitely a problem.**
    Q:    Does that affect the ability and the efficiency of the Boston Police to deliver services to the men and women of the Boston Police?
    **A:**    **Yes.**

(Hrg. Tr. II at 103:2-14).

    Q.    And he referred to himself as a patriot?
    **A.**    **That's correct.**

> Q. Does that affect the ability of the Boston Police Department to deliver efficient services to the men and women of the City of Boston?
> **A. Absolutely it does.**

(Id. at 107:8-13).

These questions are explicitly designed to align with Pickering's critical balancing inquiry: whether an employee's protected speech disrupts workplace efficiency, relationships, or public trust. Specifically, the City anticipated that calling someone a "patriot" alone was clearly protected speech. Recognizing this, the City strategically shifted to asking about the language "traitor," and explicitly connected that speech to a negative impact on the Department's efficiency and operational effectiveness – core components of the Pickering balancing test.

By asking Owens if characterizing others as "traitors" creates "a problem" and whether it affects "the ability and efficiency" of the Boston Police to deliver services, the City was clearly laying a factual and legal foundation to argue under Pickering that the Department's interest in maintaining public trust, internal cohesion, and operational effectiveness outweighs the employee's free speech rights. This line of questioning thus demonstrates that the City consciously anticipated and prepared for a First Amendment defense, precisely aligning its examination and evidence with the Pickering balancing analysis.

## VI. ISSUE PRECLUSION DEPENDS ON OPPORTUNITY, NOT OPTIMAL USE.

The City implies that it should not be bound by the Commission's determination because they claim to have inadequately explored First Amendment issues at the administrative hearing. This argument misunderstands the fundamental principle of issue preclusion. Issue preclusion does not turn on whether a party fully exploited its litigation opportunities or whether it presented the strongest case possible; rather, it rests solely on whether the party had an adequate opportunity to litigate the issue in question. As the Massachusetts Supreme Judicial Court explained in In re Goldstone, 445 Mass. 551, 560 (2005): "Issue preclusion is premised on a party's opportunity to litigate an issue, not whether they made the best use of that opportunity."

Here, the City had a full and fair opportunity to litigate whether Abasciano's tweets justified his termination, including the ability to present extensive witness testimony, cross-examine his witnesses, introduce documents, subpoena records, and submit comprehensive post-hearing briefs. The City explicitly chose their litigation strategy and arguments, tracking the standards outlined in Pickering, yet failed to prevail.  The City's request for a second chance amounts to nothing more than an attempt to reshuffle the deck after the cards have already been dealt.  Its decision not to "make the best use" of that opportunity provides no grounds to avoid issue preclusion.

## CONCLUSION

For the reasons set forth above, and as fully articulated in his prior submissions, Abasciano respectfully requests that the Court grant his Motion for Partial Summary Judgment.

Respectfully submitted by:

Plaintiff
JOSEPH ABASCIANO

By His Attorney,

/s/Mark P. Gagliardi
Mark P. Gagliardi (MA BBO #657622)
mark@markgagliardilaw.net

LAW OFFICE OF MARK P. GAGLIARDI
56 Pine Street, Suite 200
Providence, RI 02903
(401) 277-2030 (office)
(401) 274-2780 (fax)
(401) 487-6666 (mobile)

Dated:  July 28, 2025

## CERTIFICATION OF SERVICE

I hereby certify that on this **28**th day of July 20**25**, I filed electronically this document with the ECF system of the United States District Court for the District of Massachusetts and, therefore, all counsel of record has received notice electronically.

/s/Mark P. Gagliardi
Mark P. Gagliardi

Page 15 of 15