UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH ABASCIANO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-12654-ADB |
| | * | |
| CITY OF BOSTON, by and through its | * | |
| Treasurer, Ashley Groffenberger; | * | |
| MICHELLE WU; MICHAEL A. COX; | * | |
| PHILLIP OWENS; and JOSEPH | * | |
| COPPINGER, | * | |
| | | |
| Defendants. | | |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

     Plaintiff Joseph Abasciano ("Abasciano") brings federal and state civil-rights claims and state-law tort claims against the City of Boston ("City"), and four City employees, Michelle Wu, Michael A. Cox, Phillip Owens, and Joseph Coppinger (with the City, "Defendants"). [ECF No. 37 ("Second Amended Verified Complaint" or "SAC")]. Currently before the Court is Abasciano's motion for partial summary judgment on the issue of liability as to Count VII of the Second Amended Verified Complaint, a First Amendment retaliation claim against the City brought under 42 U.S.C. § 1983. [ECF No. 32]. For the reasons set forth below, the motion is **GRANTED**.

I.      BACKGROUND

   A.     Material Facts[1]

Abasciano started working as a police officer for the Boston Police Department in 2007. [ECF No. 40 ¶ 16]; see also [ECF No. 43 ¶ 1]. On January 5, 2021, while on Family Medical Leave Act leave, he travelled to Washington, D.C., with a fellow police officer to attend the so-called "Stop the Steal" rally scheduled for the next day at which President Donald Trump was expected to speak. [ECF No. 43 ¶ 5]; [ECF No. 40 ¶ 24]. On January 6, 2021, Abasciano and his fellow officer attended the rally at the Ellipse in front of the White House.[2] [ECF No. 43 ¶ 8].

As relevant here, over the course of the day, Abasciano posted a series of tweets on Twitter (now known as X) from an account with the handle "@mailboxjoe." [ECF No. 43 ¶¶ 4, 6–7, 9–12]; [ECF No. 40 ¶ 68]; see generally [ECF No. 34-7 (@mailboxjoe tweet history)]. At 5:53 a.m., he replied to a tweet from @GabrielSterling, who worked in the office of Georgia Secretary of State Brad Raffensberger, writing, "I can't wait to see you dragged away in handcuffs." [ECF No. 43 ¶ 6]. At 6:44 a.m., he tweeted, "MAGA Millions Patriots here in DC. Today is the day for choosing. Today there will be only two parties in America. Traitors and

---

[1] The Court draws the facts from the parties' combined Rule 56.1 statement of material facts, which consists of Defendants' Response to Plaintiff's Statement of Material Facts and Proposed Additional Material Facts, [ECF No. 43], and Abasciano's Response to Defendants' Statement of Additional Material Facts, [ECF No. 49], and documents referenced therein. The Court additionally draws on Defendants' Answer to the SAC, [ECF No. 40].
[2] Abasciano alleges that the breach of the Capitol building happened on the opposite side of the building from where he and his fellow officer were, and that he did not enter the Capitol, damage any property, or commit any acts of violence that day. See generally [ECF No. 37 ¶¶ 35–57]. The Massachusetts Civil Service Commission later found that the Boston Police Department's initial investigations into Abasciano "credibly concluded . . . [that Abasciano] did not personally participate [in] or condone the insurrection that took place that day." [ECF No. 34-1 at 37].

Patriots!" adding the hashtags "#January 6, #MAGA[,] and #MarchForTrump." [Id. ¶ 7]. At 8:14 a.m., he tweeted, "Hey @senmajlder look out your window. Millions of Patriots are at your doorstep and we are watching.  It is time for choosing.  Are you a traitor or are you a Patriot #MarchForTrump #StopTheSteal #PatriotParty." [Id. ¶ 9]; [ECF No. 40 ¶ 86]. At 12:40 p.m., while at the rally, Abasciano tweeted, "Everything that happens going forward @VP is now on your conscience," with the hashtags "#1776Again, #MarchForTrump[,] and #WeThePeople." [ECF No. 43 ¶ 10]. At 3:54 p.m., he tweeted, "I hope you never sleep well again @VP your Treasonous Act lead [sic] to the murder of an innocent girl and the death of America. You are not a Godly man. I guess @LLinWood was right about you all along." [Id. ¶ 11]. At 5:22 p.m., he tweeted, "What I saw in [sic] today frankly made me weep for our once great nation. The Political Elitist Class has successfully turned Americans against each other. Patriots and Law Enforcement trying to do their jobs in a no win [sic] position. I fear this Treasonous election has killed the republic." [Id. ¶ 12].

After Abasciano was identified as the owner of @mailboxjoe, he shut down the account. See [ECF No. 43 ¶ 14]; [ECF No. 40 ¶ 132 & n.8].  Soon afterward, the Boston Police Department received the following anonymous complaint through Twitter: "@bostonpolice – just a heads up. A couple of your off duty officers were at the Capitol taking pics and here's Abasciano threatening VP and members of Congress. He and others have now removed their social media." [ECF No. 43 ¶ 14].  Attached to the tweet were screenshots of three of Abasciano's January 6, 2021 tweets.  [Id.].

The Boston Police Department initiated two investigations against Abasciano based on the events of January 6, 2021, first an investigation by the Anti-Corruption Division ("ACD") in the Bureau of Professional Standards, which focused on whether Abasciano had engaged in any

3

criminal misconduct, and then an investigation by the Internal Affairs Division ("IAD") of the Bureau of Professional Standards into whether his actions had violated any Boston Police Department rules or procedures. [ECF No. 43 ¶¶ 15–16]. The ACD investigation concluded that Abasciano's tweets and conduct on January 6, 2021 violated no criminal law and the investigation was closed on May 3, 2021. [Id. ¶ 18].

The officer assigned to the IAD investigation, Sergeant Detective Antunez, prepared an investigative report, which he submitted through Lieutenant Detective Thomas Lima ("Lima") to Deputy Superintendent Eddy Chrispin ("Chrispin"), who was then in charge of the IAD. [ECF No. 43 ¶¶ 19–20]. Lima then prepared a cover report, dated November 16, 2021, that "did not find any evidence in which [Abasciano] was in violation of any BPD rules" and recommended that the allegation that Abasciano had violated Boston Police Department Rule 102, Section 2, Neglect of Duty/Unreasonable Judgment be classified as "not sustained." [Id. ¶ 21]; [ECF No. 34-2 at 17]. Lima's report was forwarded to and approved by Chrispin, then forwarded to Superintendent Sharon Dottin ("Dottin"), who noted and approved the report and forwarded it to the Boston Police Department Legal Advisor for review. [ECF No. 43 ¶ 23]. On December 8, 2021, the Legal Advisor agreed with the finding of "non-sustained" as to all allegations against Abasciano and forwarded the file to Superintendent-in-Chief Gregory Long ("Long"), the Acting Police Commissioner "who then had the final word on all IAD complaints." [Id. ¶ 24]. Long took no action on the recommended finding during his tenure. [Id. ¶ 25].

Ten months later, in September 2022, Michael Cox, the new Police Commissioner, elevated Sergeant Detective Philip Owens ("Owens") to the position of Deputy Superintendent, eventually assigning him to replace Chrispin as the head of the IAD. [ECF No. 43 ¶ 26]. On December 20, 2022, Owens forwarded a "non-concurrence" letter to Cox, in which he disagreed

with the recommended finding of "non-sustained" contained in Lima's IAD report, writing that Abasciano had "tweeted incendiary tweets that condone the violent insurrection [that] would be viewed unfavorably by the Boston Police Department and the citizens of the City of Boston." [Id. ¶¶ 27–29]. Dottin and the Legal Advisor then both reversed their prior positions and approved Owens's letter that recommended findings of "sustained" violations of Boston Police Department rules. [Id. ¶ 30]. After a "Green Folder" meeting, "in which it was recommended that Abasciano be terminated," [id. ¶ 31], Cox approved the recommendation to proceed with his termination, [id. ¶ 35]. On January 30, 2023, and February 15, 2023, the Boston Police Department convened a hearing, which resulted in a report finding that Abasciano had violated Boston Police Department Rule 103, Section 3, Conduct Unbecoming, and Rule 113, Section 5, Canon 8. [Id. ¶¶ 36, 39]. Finally, on March 13, 2023, Cox terminated Abasciano, writing in his termination letter,

> I find your social media posts describing individuals that stormed the Capital [sic] building as "patriots" calls into question your ability to police members of the community in an unbiased and objective manner. I also find that this conduct impairs the operation of the Department and its employees by damaging the Department's reputation and trust within the community. The Boston Police Department maintains a mission to foster trust and cooperation in the community and your conduct is detrimental to the mission of the Boston Police Department.

[Id. ¶ 40]; see also [ECF No. 34-3 (termination letter)].

On March 23, 2023, Abasciano contested his termination by appealing to the Massachusetts Civil Service Commission ("Commission"). [ECF No. 43 ¶ 41]. The Commission held five days of evidentiary hearings between August 16, 2023, and December 7, 2023, at which the parties submitted exhibits and called witnesses. [Id. ¶¶ 42–45]. On December 19, 2024, the Commission issued a forty-nine-page decision vacating Abasciano's termination. [Id. ¶ 48]; see generally [ECF No. 34-1]. As relevant here, the decision considered

"whether, on the facts and the law, [Abasciano's] tweets were constitutionally protected speech, as he claimed, or whether, when made, or after they became public, the tweets rose to the level of sanctionable misconduct that justified his termination as the BPD claimed." [ECF No. 34-1 at 3]. Applying the three-step framework set forth in the U.S. Supreme Court's decision in Pickering v. Board of Education, 391 U.S. 563 (1968), the Commission concluded that Abasciano's tweets were speech protected under the First Amendment to the U.S. Constitution and, therefore, could not be sanctioned as "conduct unbecoming" under Boston Police Department Rule 102, Section 3, or as a violation of the Boston Police Department's Canon of Ethics under Rule 113, Canon 8. [Id. at 34–35, 37–45]. The City did not appeal the Commission's decision. [ECF No. 43 ¶ 53].

### B. Procedural History

Abasciano initiated the instant action on October 18, 2024, [ECF No. 1], filing an amended complaint on February 19, 2025, after the Commission had issued its decision, [ECF No. 17]. On June 3, 2025, following an unopposed motion for leave to amend, [ECF No. 35], which the Court granted, [ECF No. 36], he filed the operative Second Amended Verified Complaint, [ECF No. 37]. Abasciano filed the instant motion for partial summary judgment on May 27, 2025, [ECF No. 32], Defendants opposed the motion on July 1, 2025, [ECF No. 42], and Abasciano replied on July 28, 2025, [ECF No. 48].[3]

---

[3] Although Abasciano filed his motion before he filed the operative SAC, the Court treats it as a motion for summary judgment with respect to the SAC. See, e.g., DeLia v. Verizon Commc'ns, Inc., 258 F.R.D. 189, 192 (D. Mass. 2009).

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is considered "genuine" when "the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  A fact is considered "material" when "its existence or nonexistence has the potential to change the outcome of the suit." Id. at 5 (citing Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995)).

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment." Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  Where inferences are to be drawn from the proffered facts, those inferences "must be viewed in the light most favorable to the party opposing the motion." Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)).  The Court, however, "safely may ignore conclusory allegations, improbable inferences, and unsupported speculation." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation modified).

## III.  DISCUSSION

Abasciano argues that the Commission's findings "conclusively establish the elements" of his § 1983 claim against the City, and that he is accordingly entitled to summary judgment on liability as to Count VII of the SAC, which alleges First Amendment retaliation in violation of

42 U.S.C. § 1983, under the doctrine of offensive collateral estoppel. [ECF No. 33 at 6]. Defendants respond that the Commission's findings are "generally not binding in a subsequent civil suit," pointing out that its "hearings are administrative in nature, quasi-judicial, and lack procedural safeguards" and arguing that "the specific criteria for collateral estoppel" have not been met in this case. [ECF No. 42 at 1].

The doctrine of collateral estoppel, also known as issue preclusion, "'bars parties from re-litigating issues of either fact or law that were adjudicated in an earlier proceeding' before a court or other tribunal of competent jurisdiction." Patton v. Johnson, 915 F.3d 827, 833 (1st Cir. 2019) (quoting Robb Evans & Assocs., LLC v. United States, 850 F.3d 24, 31 (1st Cir. 2017)). "The offensive use of collateral estoppel 'occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully.'" Bellermann v. Fitchburg Gas & Elec. Light Co., 18 N.E.3d 1050, 1065 (Mass. 2014) (quoting Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1039 (Mass. 2013)). "[W]hen a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Diaz v. City of Somerville, 59 F.4th 24, 29 (1st Cir. 2023) (quoting Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)) (treating Commission finding as preclusive and affirming grant of summary judgment to defendant on Mass. Gen. Laws ch. 151B claim). Accordingly, the Court looks to Massachusetts law to determine what preclusive effect, if any, the Commission's decision has on Abasciano's § 1983 claim. Id. at 30.

Under Massachusetts law, issue preclusion applies when

> (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the

> prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication, was essential to the earlier judgment, and was actually litigated in the prior action.

Id. (quoting Degiacomo v. City of Quincy, 63 N.E.3d 365, 369 (Mass. 2016)).

"Once a plaintiff establishes these initial requirements, the 'central inquiry' becomes whether the defendant had a 'full and fair opportunity to litigate the issue in the first action.'" Bellermann, 18 N.E.3d at 1065 (quoting Pierce v. Morrison Mahoney LLP, 897 N.E.2d 562, 572 (Mass. 2008)). "The party facing preclusion bears the burden of proof on the question of fairness." Id. at 1066–67. In making the fairness determination,

> courts generally ask whether (1) the party in whose favor the [preclusion] would operate could have joined the original action, (2) the party against whom it would operate had an adequate incentive to defend the original action vigorously, (3) the judgment relied upon as a basis for the [preclusion] is itself inconsistent with one or more previous judgments in favor of the defendant, and (4) the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

In re Goldstone, 839 N.E.2d 825, 832 (Mass. 2005) (quoting Haran v. Bd. of Registration in Med., 500 N.E.2d 268, 272–73 (Mass. 1986)); see also Bar Couns. v. Bd. of Bar Overseers, 647 N.E.2d 1182, 1185 (Mass. 1995) (listing "eight circumstances for a judge to consider" when determining whether to apply offensive collateral estoppel). If the conditions for collateral estoppel are satisfied, "[a] final order of an administrative agency in an adjudicatory proceeding, not appealed from and as to which the appeal period has expired, precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction." Diaz, 59 F.4th at 30 (quoting Stowe v. Bologna, 610 N.E.2d 961, 963 (Mass. 1993)). Notably, "issue preclusion prevent[s] relitigation of wrong decisions just as much as right ones," Patton, 915 F.3d at 833 (quoting Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 29 (1st Cir. 2017)), and "the first determination is binding not because it is right but because

9

it is first . . . and was reached after a full and fair opportunity between the parties to litigate the issue," Bath Iron Works Corp. v. Dir., Off. of Workers' Comp. Programs, 125 F.3d 18, 22 (1st Cir. 1997).

Here, Defendants do not appear to dispute that the Commission's decision operated as a final adjudication on the merits or that the City was a party to the Commission proceedings.  See [ECF No. 33 at 17 & n.71]; see generally [ECF No. 42].  Instead, Defendants argue that the claims and issues decided by the Commission are not identical to those in the current action, [ECF No. 42 at 6–10], Abasciano's First Amendment retaliation claim was not litigated before the Commission, [id. at 10–16], and "[p]rocedural [f]airness [w]eighs in [f]avor of the Defendants and [d]ictates [t]hat the First Amendment [c]laim be [l]itigated in a [c]ourt [o]f [l]aw," [id. at 16].  The Court is not persuaded by Defendants' arguments.

First, the relevant issues are identical.  To establish a First Amendment retaliation claim, a public employee must show that (1) he "spoke as a citizen on a matter of public concern," (2) "the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently," an assessment commonly referred to as the Pickering balancing test, and (3) "the protected speech was a substantial or motivating factor in the adverse employment decision."  Hussey v. City of Cambridge, 149 F.4th 57, 65–66 (1st Cir. 2025) (first quoting Gilbert v. City of Chicopee, 915 F.3d 74, 82 (1st Cir. 2019); then quoting Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004); and then quoting Ciarametaro v. City of Gloucester, 87 F.4th 83, 88 (1st Cir. 2023)).  Here, the Commission explicitly found, "by the preponderance of evidence," that Abasciano's tweets were "private political speech on matters of public concern," the City "ha[d] not established an adequate justification to restrict that speech in the interest of protecting the BPD's mission or operations," and the City's "decision to terminate [Abasciano] is grounded

10

explicitly on the tweets he sent." [ECF No. 34-1 at 36]. These are the same issues upon which resolution of Abasciano's § 1983 claim turns here, and Defendants' contention that "[t]he Commission did not conduct an independent inquiry of First Amendment law," [ECF No. 42 at 10], cannot be squared with the Commission's written decision, which analyzed this issue extensively, [ECF No. 34-1 at 34–35, 37–45]. Similarly, Defendants' insistence that the Commission was determining whether just cause existed for Abasciano's firing, whereas this Court is being asked to adjudicate his First Amendment claim, [ECF No. 42 at 1, 9], is "a distinction without a difference," Diaz, 59 F.4th at 30, because the issue in either forum is whether Abasciano's tweets were speech protected under the First Amendment.

Second, the issue was "essential to the merits of the underlying case" before the Commission. Mullins v. Corcoran, 172 N.E.3d 759, 768 (Mass. 2021) (quoting Jarosz v. Palmer, 766 N.E.2d 482, 489 (Mass. 2002)). As the Commission explained, its decision turned on "whether, on the facts and the law, [Abasciano's] tweets were constitutionally protected speech . . . or whether . . . the tweets rose to the level of sanctionable misconduct that justified his termination." [ECF No. 34-1 at 3]. The Commission concluded that the tweets were protected by the First Amendment and that "[t]herefore, the tweets cannot be sanctioned as 'conduct unbecoming' under BPD Rule 102, Section 3 or as a violation of the BPD's Canon of Ethics under Rule 113, Canon 8." [Id. at 35 (emphasis added)]. In other words, the Commission vacated Abasciano's termination because it found that his tweets were protected by the First Amendment, and the First Amendment issue was, accordingly, essential to the merits of the underlying case.

Third, the issue was actually litigated before the Commission. Defendants take issue primarily with what they characterize as the Commission's insufficient consideration of facts

related to the Pickering balancing test, arguing that "[t]here was virtually no testimony or analysis on the efficiency of public services, impacts on [Abasciano's] ability to prevent crime and protect the community, impacts on [his] ability to service the community, and his ability to uphold the laws based on the inflammatory nature of his tweets."[4] [ECF No. 42 at 11]. That the Commission did not consider all the evidence that Defendants now believe is critical to the First Amendment analysis does not mean, however, that the issue was not "actually litigated" for purposes of issue preclusion. See Mullins, 172 N.E.3d at 767 ("An issue has been 'actually litigated' if it 'was subject to an adversary presentation and consequent judgment that was not a product of the parties' consent." (quoting Jarosz, 766 N.E.2d at 488)). Abasciano repeatedly raised the First Amendment issue throughout the Commission proceedings, including in his pre-hearing memorandum, [ECF No. 48-4 at 2], at the pre-hearing conference before the Commission, [ECF No. 48-5 at 3], at the hearing itself, where he specifically addressed the Pickering issue, [ECF No. 48-6 at 28], and in his post-hearing brief, [ECF No. 34-5 at 37–39]. The City, too, elicited testimony concerning the impact of Abasciano's tweets on the functioning of the Boston Police Department, [ECF No. 48-7 at 4–5], and argued at length in its post-hearing brief that the tweets were not protected First Amendment activity under Pickering, [ECF No. 34-4 at 32–36]. Thus, the issue was actually litigated before the Commission.

Finally, the City had a full and fair opportunity to litigate the issue before the Commission. Defendants argue that they did not have an incentive to litigate Abasciano's First

---

[4] Seemingly confusing claim preclusion with issue preclusion, Defendants also repeatedly assert that Abasciano's First Amendment claim was not litigated before the Commission, e.g., [ECF No. 42 at 10], but that does not affect his ability to assert issue preclusion, In re Sonus Networks, Inc., S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007) ("[I]ssue preclusion . . . bars relitigation of . . . issues [actually litigated and decided in the first litigation] even in the context of a suit based on an entirely different claim.").

Amendment claims before the Commission, repeating their argument that these claims were not actually litigated. [ECF No. 42 at 14–16]. Abasciano counters that the City had an opportunity and incentive to litigate the constitutional issues because "the City was explicitly on notice, well in advance of the Commission hearings, that Abasciano's termination implicated a potential First Amendment retaliation claim under Section 1983." [ECF No. 48 at 8]. In the Court's view, Defendants have failed to make a sufficient showing that applying collateral estoppel in this case would be unfair. Properly framed, the issue is not whether Defendants had a full and fair opportunity to litigate Abasciano's as-yet-unasserted First Amendment claim, but whether they had a full and fair opportunity to litigate the First Amendment issue as to which Abasciano now seeks to assert collateral estoppel. See Bellermann, 18 N.E.3d at 1067. As discussed above, Defendants did actually litigate that issue, participating in five days of evidentiary hearings before the Commission, submitting exhibits, calling and cross-examining witnesses, and submitting a post-hearing memorandum that specifically addressed the issue. [ECF No. 43 ¶¶ 42–46].

Moreover, in addition to the obvious incentive the City had to defend the Boston Police Department's decision in what Superintendent Owens described as "'a high-profile case' he had read about in the newspapers," [ECF No. 43 ¶ 27], it was also foreseeable that Abasciano might bring separate civil-rights litigation against the City in the future, in part because Abasciano explicitly told the City so well in advance of the Commission proceedings, see [ECF No. 34-6 at 2]; cf. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979) ("If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable." (citing The Evergreens v. Nunan, 141 F.2d 927, 929 (2nd Cir. 1944))). Thus, the City had an adequate incentive to oppose Abasciano's appeal in

13

general, and Abasciano's arguments on the key First Amendment issue, in particular. That Defendants did not argue the issue more vigorously, present more evidence on it, see [ECF No. 42 at 15], or appeal the Commission's adverse decision does not mean that they did not have a full and fair opportunity to litigate the issue, Diaz, 59 F.4th at 31 ("[I]ssue preclusion is premised on a party's prior opportunity to litigate an issue, not on whether the party made the best use of that opportunity." (quoting In re Goldstone, 839 N.E.2d at 833)).[5]

Accordingly, Defendants are estopped from relitigating the issue of whether the City's termination of Abasciano violated the First Amendment, regardless of whether this Court agrees with the Commission's resolution of this issue. Patton, 915 F.3d at 833. Because the Commission's decision is dispositive of the City's liability on Abasciano's § 1983 claim, Abasciano's motion for partial summary judgment is granted.

---

[5] Defendants do not make a sufficient showing on any of the other fairness factors, either. They argue that the January 30, 2023, and February 15, 2023, hearings, at which the Boston Police Department sustained two violations of the Boston Police Department's rules and regulations, count as previous judgments in the City's favor that are inconsistent with the Commission's decision. [ECF No. 42 at 15–16]. Defendants offer no authority for the proposition, and the Court is not persuaded, that these findings, which were overturned on direct appeal to the Commission, count as a "previous judgment[] in favor of the defendant." In re Goldstone, 839 N.E.2d at 832 (quoting Haran, 500 N.E.2d at 273); cf. Parklane Hosiery, 439 U.S. at 330 n.14 (discussing example of "a railroad collision" that "injures 50 passengers all of whom bring separate actions against the railroad" of which "the railroad wins the first 25" before "a plaintiff wins in suit 26"). Defendants also allude to supposed limitations of Commission proceedings, including "limited protections for the litigants, limited discovery, varying rules around examinations, evidentiary standards, and limited power to subpoena documents or witnesses," [ECF No. 42 at 4], but they do not engage with Abasciano's detailed recounting of the City's "robust procedural rights in Commission proceedings," [ECF No. 33 at 28]; see also [id. at 28–31 (discussing Commission procedures, including for discovery, hearings, and judicial review)], and do not identify any specific "procedural opportunities" unavailable in Commission proceedings "that could readily cause a different result," In re Goldstone, 839 N.E.2d at 832 (quoting Haran, 500 N.E.2d at 273).

IV.    **CONCLUSION**

For the reasons set forth above, Abasciano's motion for partial summary judgment, [ECF No. 32], is **GRANTED**.

**SO ORDERED.**

November 4, 2025                                                  */s/ Allison D. Burroughs*
                                                                           ALLISON D. BURROUGHS
                                                                           U.S. DISTRICT JUDGE